**Joseph DONNELLY, Jr., Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**No. 1808.**

Supreme Court of Alaska.

Nov. 30, 1973.

20.  Berger v. New York, 388 U.S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1049, 1050 (1967).

Herbert D. Soll, Public Defender, Anchorage, Robert G. Coats, Asst. Public Defender, Fairbanks, for appellant.

John E. Havelock, Atty. Gen., Juneau, Seaborn J. Buckalew, Jr., Dist. Atty., Stephen G. Dunning, Asst. Dist. Atty., Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER and FITZGERALD, JJ.

## OPINION

FITZGERALD, Justice.

Appellant Donnelly was convicted by a jury in 1963 of both burglary and assault with intent to wound. The trial court sentenced him to twenty years for each offense, the terms to be served concurrently. The trial court ordered that these sentences would begin to run, however, only after Donnelly had finished serving a three-year sentence stemming from an earlier conviction for receiving stolen goods.

Donnelly took no appeal from these convictions. In 1970 he filed a Rule 35(b)[1] application which was not acted upon. Donnelly also filed a petition for a writ of habeas corpus with a federal court in 1970, but this petition was dismissed on technical grounds.

In 1972 appellant filed his present Rule 35(b) application, alleging numerous infirmities in his conviction and sentence. Appellee State of Alaska responded to Donnelly's application with a motion for summary disposition supported by reference to the transcripts, files and records of the superior court and by an affidavit from Donnelly's attorney in the 1963 trial. The superior court heard the matter and granted the motion, finding that no evidentiary hearing was required. Donnelly now contends that the superior court erred in granting the State's motion for summary disposition.

The issues raised in this appeal necessitate an analysis of Rule 35 of the Rules of Criminal Procedure.

Until 1968 Alaska Rule 35 was virtually identical to the federal statutory [2] post-conviction relief remedy, 28 U.S.C. § 2255. The pre-1968 Alaska rule, like the federal statute,[3] required an evidentiary hearing on a post-conviction relief application unless the record, including the application, conclusively demonstrated that the applicant was entitled to no relief, no matter how improbable the claim or how unlikely the possibility of its proof.

We hold that Rule 35 permits the court on the motion of either party to grant summary disposition of the application if from the entire record, including depositions, answers to interrogatories, pleadings, admissions, agreements of fact, and affidavits, the court determines that there is no genuine issue of material fact. Our present rule does not favor evidentiary hearings based on unsupported allegations or mere conclusions.[4] It requires the development of *genuine* issues through the use of discovery tools and the presentation of admissible evidence by way of deposi-

1. Crim.Rule 35(b) of the Rules of Criminal Procedure allows convicted persons to petition for relief for the following reasons:
  "(1) that the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of Alaska;
  (2) that the court was without jurisdiction to impose sentence;
  (3) that the sentence imposed exceeded the maximum authorized by law, or is otherwise not in accordance with the sentence authorized by law;
  (4) that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;
  (5) that his sentence has expired, his probation, parole or conditional release have been unlawfully revoked, or he is otherwise unlawfully held in custody or other restraint;
  (6) that the conviction or sentence is otherwise subject to collateral attack upon any ground or alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding, or remedy; or
  (7) that there has been a significant change in law, whether substantive or pro-

cedural, applied in the process leading to applicant's conviction or sentence, when sufficient reasons exist to allow retroactive application of the changed legal standards[.]"

2. The statutory procedure was designed to supplant in part the more cumbersome traditional habeas corpus remedy. The statutory procedure requires applicants to assert their claims in the jurisdiction where they were convicted, rather than in the jurisdiction in which they are incarcerated. Thus the burden of hearing applications for post-conviction relief is more evenly spread among the courts.

3. *See, e. g.,* Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Widermyre v. State, 452 P.2d 885 (Alaska 1969).

4. The present rule is an attempt to resolve the dilemma under the Federal [and pre-1968 Alaska] rule, which was "too inflexible in attempting to dispose of application for post-conviction relief either on the pleadings, which is ordinarily too early, or after a plenary hearing, which is all too often unnecessary." ABA Standards Relating to Post-Conviction Remedies § 4.5, at 69, Approved Draft (1968).

tions, interrogatories or affidavits.[5] Unsupported claims, if spurious or fanciful, are to be disposed of by summary disposition. Naturally the party seeking summary disposition has the burden of showing the absence of genuine issues.

■ It may be necessary, in order to develop genuine issues, for the prisoner making application to prepare supplemental pleadings and to participate in the discovery procedures permitted under the rule. It is therefore essential that he be represented by competent counsel in the event that he is unable to afford an attorney. Only the presence of counsel will assure that meritorious claims will be fairly presented and full advantage taken of the procedures and investigation contemplated by the rule. In Nichols v. State, 425 P.2d 247 (Alaska 1967) this court held that an indigent prisoner seeking relief under Rule 35(b) must be afforded representation at a hearing for post-conviction relief. We said that this was necessary in order to assure full and fair exploration of the claim. Because Crim. Rule 35 now requires some development of genuine issues of fact in order to merit an evidentiary hearing, the counsel requirements compelled by *Nichols* must be extended to require representation at the time the initial application is filed.[6]

Against this backdrop, we examine appellant Donnelly's contentions, which are numerous and varied. Fairly summarized they are that the sentence imposed was illegal for technical reasons, that the pre-sentence report used by the court was incomplete, untimely and erroneous, that the prosecution suppressed evidence favorable to Donnelly and knowingly presented perjured testimony, that the prosecutor used unfair trial tactics, that Donnelly's trial counsel was ineffective, that his trial counsel refused to call witnesses who would have established a self-defense justification, that his trial counsel would not permit Donnelly to testify although he demanded to do so, and Donnelly now claims that his trial counsel was involved in a conflict of interest at the time of the 1963 trial. In addition to his claims relating to the trial and disposition, appellant argues that the superior court erred in ruling that Donnelly was subject to this state's parole authorities rather than to the federal parole board.

We have examined the records and files in order to determine if the superior court erred in failing to order an evidentiary hearing on these allegations.

Undisputed testimony at the trial revealed that in the early morning hours of July 7th, 1963, Donnelly knocked loudly on the door of an apartment occupied by Sterling Bell and his wife. Bell cautiously opened the door and listened to Donnelly's excited story that while he was rushing a friend to a hospital his car had stalled. Bell, confused and fearful, attempted to lock Donnelly out of his house. Donnelly broke through the door, however, and shot Bell four times

---

5. Crim. Rule 35(h) provides in part,
   "All rules and statutes applicable in civil proceedings, including pre-trial and discovery procedures are available to the parties."

6. We note with approval that Donnelly has been assisted in the present application by the public defender's office. To the extent that the text of Rule 35(f) and dicta in Merrill v. State, 457 P.2d 231, 239 (Alaska 1969) intimate that the indigent applicant is not entitled to counsel until a hearing has been granted, we now expressly hold to the contrary.
   There are other reasons for extending this right, of course. As the United States Supreme Court said in Johnson v. Avery, 393 U.S. 483, 21 L.Ed.2d 718 (1969):
   "Jails and penitentiaries include among their inmates a high percentage of persons who are totally or functionally illiterate, whose educational attainments are slight, and whose intelligence is limited. . . .

   .    .    .    .    .

   In the case of all except those who are able to help themselves—usually a few old hands or exceptionally gifted prisoners—the prisoner is, in effect, denied access to the courts unless such help is available."
   393 U.S. 487–488, 89 S.Ct. 750, 21 L.Ed.2d 122–123.

with a pistol as Bell attempted to fend him off with a mop handle.

Donnelly left the wounded Bell and persuaded George Johnson, who occupied the adjacent apartment, to assist in restarting the stalled vehicle. Later this same day Donnelly was arrested, charged with the shooting and arraigned by a magistrate.

At the time of his arraignment, Donnelly was advised of his constitutional rights and promptly thereafter he was questioned by the police. According to the testimony of the police officers, Donnelly admitted shooting Bell, but argued that Bell deserved to be shot for his refusal to aid Donnelly in restarting the stalled vehicle.

At the trial, Donnelly's counsel admitted in an opening statement that his client had shot Bell, but contended that Donnelly's mental acuity was so diminished by alcohol, fatigue and excitement that he could not form the specific intent required for the crimes with which he was charged. Although several witnesses were called to testify by the defense, Donnelly did not testify on his own behalf. The jury found him guilty of both counts of the indictment.

■ Appellant now urges that the superior court should have held an evidentiary hearing on his Rule 35 application in order to determine whether the prosecution suppressed evidence favorable to Donnelly. The specific evidence which Donnelly claims was suppressed consists of alleged statements made by Donnelly to the police to the effect that Bell, the victim, was armed and that Donnelly shot in self-defense, together with tangible evidence in the form of a T-shirt with a bullet hole which would prove that Donnelly himself was shot. There are a number of relevant facts which appear in the record which reflect upon appellant's allegations. No gun was found other than the one with which Donnelly shot Bell, and no bullets were found other than the ones fired from Donnelly's gun. The T-shirt to which appellant refers was marked for identification at the trial; the shirt has been preserved as an exhibit; an examination reveals no evidence of a bullet hole. Furthermore, a sizable number of witnesses saw the defendant on July 7th soon after the shooting of Bell. These witnesses include George Johnson, Mary Beam (the nurse who was on duty in the emergency room at the hospital at the time Donnelly arrived bringing his friend), the magistrate who arraigned Donnelly and at least three police officers who participated in the questioning of Donnelly on the evening of July 7th. Apparently Donnelly made no complaint to anyone about being shot in the chest, no one observed such a wound, and no record of medical treatment of Donnelly has been offered. The court below was justified in concluding that no genuine issue of material fact was presented by appellant's unsupported allegations that he was shot and acted in self-defense where these allegations are completely inconsistent with the established facts and with common sense.

■ Appellant's allegations that perjured evidence was offered are at best vague and conclusory.[7] He says that at the time he was questioned on July 7, 1963, by the assistant district attorney and by the police he made statements to them to the effect that Bell was armed, and therefore appellant acted in self-defense. His theory is that since the officers and the assistant

---

7. It has been held that conclusory allegations of perjury are insufficient to justify a hearing under 28 U.S.C.A. 2255. *See* Marcella v. United States, 344 F.2d 876 (9th Cir. 1965) wherein the court said:

"... [T]he movant must show that the testimony was perjured and that the prosecuting officials knew at the time such testimony was used that it was perjured. ... In addition, the perjured testimony said to have been knowingly used must be particularized definitely." 344 F.2d at 880 (citations omitted).

*Accord*, Grimes v. United States, 396 F.2d 331, 334 (9th Cir. 1968). We continue to look to the federal cases for some guidance in dealing with post-conviction relief, although the provisions of Cr.Rule 35 and 28 U.S.C.A. § 2255 are now somewhat dissimilar in procedural aspects. *See e. g.*, McCracken v. State, 482 P.2d 269, 273 (Alaska 1971).

district attorney at the time each was examined as a witness at the trial failed to mention appellant's exculpatory statements, the prosecutor knowingly suppressed evidence and offered perjured testimony.

The officer responsible for the questioning of appellant following the shooting was Lt. Earl Hibpshman. The interrogation took place on the evening of July 7 following appellant's arraignment. Lt. Hibpshman was recalled by the defense as a witness and was examined by appellant's trial counsel concerning statements Donnelly had made during questioning. The focus of the examination was upon appellant's sobriety at the time of the occurrence, and whether or not the subject of barbiturates was discussed. Appellant's counsel did not inquire as to whether the victim Bell had been armed or if, during the interrogation, appellant claimed that he shot Bell in self-defense. It is apparent from his direct examination of Lt. Hibpshman that appellant's trial counsel was undertaking to demonstrate Donnelly's inability to form the requisite specific intent at the time of the shooting. This was, of course, entirely consistent with appellant's defense as outlined in counsel's opening statement.

Assistant District Attorney Wanamaker was also called as a witness at the trial and examined about the conversation he had with Donnelly on July 7th. No attempt was made to bring out evidence of self-defense in the cross-examination.

On this record appellant's claim that evidence of self-defense was suppressed and that perjured testimony was knowingly used by the prosecutor is unsupported by evidence. In any case, as we have observed, Donnelly's claim of self-defense is absurd in the light of the evidence introduced at trial. The court below was correct in denying an evidentiary hearing on appellant's claims of perjury and suppression of evidence.

■ Donnelly alleges that the prosecutor indulged in unfair and prejudicial tactics which operated to deny him a fair trial. The alleged unfair tactic was characterized as a "charade" in which the prosecutor provoked a disturbance by calling Donnelly a punk; the alleged effect of the disturbance was to give the jury the impression that Donnelly was violent and dangerous. The record indicates no evidence of any such disturbance or disorder. No genuine issue of material fact was presented in these circumstances.

■■ Appellant claims that he was denied the effective assistance of counsel at trial. The accepted standard by which to measure this claim is whether the representation afforded appellant at trial was such as to make the trial a farce or a mockery.[8] The superior court reviewed the record and concluded as a matter of law that the record showed a "good defense, well thought out cross-examination, and a fair trial." Our own review of the record compels us to reach a similar conclusion.

■ Donnelly alleges that the presentence report used by the sentencing court was incomplete and untimely, because it was compiled some months prior to sentencing, and was erroneous because it recorded more offenses than he actually had been convicted of. The record shows that a supplemental report was filed with the trial court prior to the sentencing and that the presentence reports do not in fact credit Donnelly with the convictions he alleges are charged to him. Again summary disposition was proper.

Appellant brought to the attention of the court below the fact that a technical error was made by the court at the time of sentencing. The sentencing judge ordered that Donnelly's twenty-year terms were to begin after completion of the sentence "in 63–153 Cr." But the "63–153 Cr." case did not involve appellant. Rather, appellant was required to serve a three-year term in "63–73 Cr." Appellant first called the matter to the attention of the superior

---

8. Anderson v. State, 438 P.2d 228, 230 (Alaska 1968); White v. State, 457 P.2d 650 (Alaska 1969); Sullivan v. State, 509 P 2d 832 (Alaska 1973).

court for the third district in 1970. The court at that time responded by correcting the obvious technical error. However, since it now appears that appellant did not have the benefit of counsel in his 1970 "application," and because we are remanding this case to the superior court on other grounds, the court below should allow appellant to re-open the matter if he in fact has evidence of anything other than a mere clerical error.

 Donnelly's most substantial factual contention is that the superior court erred by not ordering an evidentiary hearing on his claim that he was prevented from testifying in his own behalf at the trial. We are not told how he was prevented from testifying. On the other hand, the state presented no evidence to prove that Donnelly effectively waived his right to testify—a right which this court recently confirmed .in Hughes v. State, Alaska, 513 P.2d 1115 (1973)—nor does the record assist us in the inquiry. Because the state had the burden of showing the absence of a genuine issue in this regard, we must remand for an evidentiary hearing on this issue.

The superior court summarily disposed of appellant's claim that his trial counsel's loyalties were divided. Donnelly asserts that his counsel had previously represented the victim of the assault, Bell, and hoped to do so again. He alleges that his trial counsel had stated to him at one point in the trial, "Listen, kid, I have to make a living here after you're gone." Donnelly also claims that his trial counsel had admitted his conflict of interest to the court and had requested permission to withdraw from the case. The record belies this latter assertion, and the state submitted an affidavit by the trial counsel in which he denied having any conflict of interest, or having ever represented the victim, or having made the statement alleged. Since we are remanding the case on other grounds, the trial court will have the opportunity to review this issue in greater depth. The court will probably find it advisable to order Donnelly's appearance, pursuant to Cr. Rule 35(h).[9]

 One final matter requires our attention. Donnelly argues that the superior court erred in ruling that Donnelly is subject to state rather than federal parole authorities. Donnelly argues that he is subject to the federal authorities because he is incarcerated in a federal institution. But Donnelly is a state prisoner serving a state sentence imposed by a state court. He is subject to the orders of the Alaska courts and correctional authorities. According to the state his applications for parole have been reviewed by the Alaska Parole Board. The Board has fixed the date when he becomes eligible for parole. No case has been called to our attention which supports his contention that because he is serving his state sentence in a federal institution, he is subject to the authority of the Federal Board of Parole.

Remanded for further proceedings in accordance with this opinion.

ERWIN, J., not participating.

---

9. Crim.Rule 35(h) provides in part that: "The court may order the applicant brought before it for the hearing."